UNITED STATES DISTRICT COURTT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MAMADOU BALDE | ) CAUSE NO. |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ALEJANDRO MAYORKAS, Secretary | ) |
| U.S. Department of Homeland Security, | ) |
| MERRICK B. GARLAND, Attorney General | ) |
| of the United States, and CECILIA DEPAYLUBOS | ) |
| Field Office Director for the United States | ) |
| Citizenship and Immigration Services, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION
FOR REVIEW OF THE DENIAL OF NATURALZATION UNDER 8 U.S.C. §1421 (c)**

Comes now Plaintiff, Mamadou Balde, by and through his attorneys, Flora A. Owolabi,

the Law Office of Flora A. Owolabi and Swaray Conteh, the Law Office of Swaray Conteh, and

seeks *de novo* review and adjudication of his Application for Naturalization

**INTRODUCTION**

1. This is an action brought by Mamadou Balde (hereinafter, "Plaintiff" or "Balde"), a

lawful permanent resident of the United States who is statutorily eligible to naturalize and

become a citizen of the United States, but whose application for naturalization has been

unlawfully denied by the defendants.  Balde seeks review of his application for naturalization

pursuant to Section 310(c) of the Immigration and Nationality Act (INA) 8 U.S.C. §1421(c), and

the administrative Procedure Act (APA), 5 U.S. C, §702 *et seq.*

1

**JURISDICTION**

2.  This Court has subject matter jurisdiction over the allegations presented herein

pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (original jurisdiction), 8 U.S.C.

§1421 (c) (authorizing judicial review of the denial of an application for naturalization).

Furthermore, the Court has jurisdiction over Plaintiff's case as Plaintiff's application for

naturalization has been denied after a hearing before an immigration officer pursuant to

8.U.S.C. §1447 (a).

**VENUE**

3.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial

part of the acts or omissions that give rise to Plaintiff's claim occurred at the defendants' field

office located in Indianapolis, in the Southern District of Indiana.

**PARTIES**

4.  Plaintiff is a native and citizen of Guinea.  Plaintiff obtained lawful permanent

resident status in the United States on January 31, 2016, by virtue of his successful candidacy as

the secondary entrant in the Diversity Lotter Program (DV Program) in 2014.[1]

5.  Defendant, Alejandro Mayorkas, is the Secretary of the United States Department of

Homeland Security (DHS).  This suit is brought against Secretary Mayorkas in his official capacity

---

[1] The Immigration Act of 1990 established the current and permanent Diversity Visa (DV)
program, where 55,000 immigrant visas are available in an annual lottery. The lottery aims to
diversify the immigrant population in the United States, by selecting applicants mostly from
countries with low numbers of immigrants to the United States in the previous five years.

because he is responsible for overseeing the work of the United States Citizenship and

Immigration Services (USCIS), an agency within DHS.  USCIS is the agency designated by law to

adjudicate Plaintiff's application for naturalization that is the subject of this litigation.

6.  Defendant Merrick B. Garland is the Attorney General of the United States.  This

action is brought against Attorney General Merrick B. Garland in his official capacity.  Applicants

for naturalization are required to establish eligibility to the satisfaction of the Attorney General

of the United States.

7.  Defendant Cecilia Deypalubos is the Field Office Director for the Indianapolis Field

Office of USCIS.  In her capacity as Field Office Director, Defendant Deypalubos denied Plaintiff's

application for naturalization and reaffirmed her decision when Plaintiff sought administrative

review.  Defendant Deypalubos is sued in her official capacity.

**FACTUAL BACKGROUND**

8.  Plaintiff was born in Conakry, Guinea on November 10, 1982.  Plaintiff belongs to the

Fulani ethnic group from Guinea.  In an article published in 2001 by the Wayne State University

Press, the authors wrote that, "[t]he Fulani are patrilineal, patrilocal, and moderately

polygamous, with arranged marriages accompanied by the payment of bride wealth, ideally in

the form of cattle.  Consanguineous marriage is frequent, with first and second cousin

preferred."[2]

---

[2] The subject article was provided to USCIS during its adjudication of Plaintiff's application for
naturalization.

9.  On September 7, 2014, Plaintiff married his first cousin, Ms. Aissatou Diallo (Ms. Diallo).  Plaintiff's marriage to Ms. Diallo was an arranged marriage in accordance with the Fulani culture in Guinea.

10.  Prior to his marriage to Ms. Diallo, Plaintiff was involved in a relationship with Ms. Mariame Barry (Ms. Barry).  While Plaintiff preferred his relationship with Ms. Barry, Plaintiff's mother preferred Ms. Diallo.  Plaintiff's mother insisted that Plaintiff must marry Ms. Diallo. Ms. Diallo was the daughter of Suleiman Diallo, the brother of Plaintiff's mother.  Plaintiff's mother disapproved of Plaintiff's relationship with Ms. Barry because she became pregnant out of wedlock and flouted Fulani customs and traditions.

11.  In spite of his mother's predilections, Plaintiff continued his relationship with Ms. Barry.  On July 4, 2010, Ms. Barry gave birth to Ousmane Balde, her first child with Plaintiff.  In spite of the birth of his first child, Plaintiff's mother insisted that Plaintiff must marry Ms. Diallo. Out of respect for his mother, Plaintiff agreed to marry Ms. Diallo.  Ms. Diallo was also aware of and did not disapprove of Plaintiff's relationship with Ms. Barry.

12.  Following their marriage in September 2014, Ms. Diallo and Plaintiff as a married couple gambled and jointly entered the DV Program.  Although Ms. Diallo was the lead candidate, the couple entered the program as a couple right from the outset.  The couple jointly entered the DV Program without prior knowledge that they will be successful candidates.

13.  Sometime in 2015, Ms. Diallo was informed that she and her husband (Plaintiff) had been selected as successful candidates.  Plaintiff and Ms. Diallo jointly processed their immigrant paperwork.

14.  On September 29, 2015, Ms. Diallo received an interview notice to appear at the U.S. Consulate in Dakar, Senegal.  Plaintiff was identified on the interview notice as a beneficiary.  Plaintiff and Ms. Diallo appeared for their joint interview in Dakar.

15.  After successfully going through the interview, Plaintiff and Ms. Diallo were approved for visa to immigrate to the United States.  Plaintiff and Ms. Diallo entered the United States on January 31, 2016.  Upon arriving in the United States, Plaintiff and Ms. Diallo came to Indianapolis to live with Ms. Diallo's maternal uncle, Mr. Mohamed Bangoura (Mr. Bangoura).

16.  Mr. Bangoura assisted Plaintiff and Ms. Diallo to resettle in Indianapolis, Indiana.  However, not long after their arrival, Ms. Diallo traveled to New York, NY to visit family members.  While in New York, Ms. Diallo informed Plaintiff that she preferred to live in New York and no longer wanted to live with her uncle.  Plaintiff was just beginning to establish himself in Indianapolis and did not want to go to New York.  Plaintiff pleaded with Ms. Diallo to return to Indianapolis.  Mr. Bangoura interceded on several occasions.  Mr. Bangoura unsuccessfully pleaded with his niece to return to her husband in Indianapolis.  Plaintiff made several trips to New York to persuade Ms. Diallo to return to Indianapolis.  Plaintiff was unsuccessful as well.

17.  As time went by, Plaintiff's marriage to Ms. Diallo deteriorated.  Plaintiff heard many rumors.  While in New York, Ms. Diallo became pregnant for another man to Plaintiff's

dismay.  Both families were shocked and promptly arranged for a traditional termination of the marriage of Plaintiff and Ms. Diallo.

18.  On August 22, 2017, Plaintiff filed his petition for dissolution of his marriage to Ms. Diallo in the Marion Superior Court in Indianapolis, Indiana.  On October 24, 2017, the Marion Superior Court terminated Plaintiff's marriage to Ms. Diallo.

19.  Almost two years later on May 18, 2019, Plaintiff returned to Guinea and married his long-time love, Ms. Barry.

20.   Plaintiff became eligible for naturalization as of January 31, 2020.  8 C.F.R. § 316 states a relevant part as follows:

>  (a) *General.* Except as otherwise provided in this chapter, to be eligible for naturalization, an alien must establish that he or she:
> (1) Is at least 18 years of age;
> (2) Has been lawfully admitted as a permanent resident of the United States;
> (3) Has resided continuously within the United States, as defined under § 316.5, for a period of at least five years after having been lawfully admitted for permanent residence;
> (4) Has been physically present in the United States for at least 30 months of the five years preceding the date of filing the application;
> (5) Immediately preceding the filing of an application, or immediately preceding the examination on the application if the application was filed early pursuant to section 334(a) of the Act and the three month period falls within the required period of residence under section 316(a) or 319(a) of the Act, has resided, as defined under § 316.5, for at least three months in a State or Service district having jurisdiction over the applicant's actual place of residence;
> (6) Has resided continuously within the United States from the date of application for naturalization up to the time of admission to citizenship;
> (7) For all relevant time periods under this paragraph, has been and continues to be a person of good moral character, attached to the principles of the Constitution of the United States, and favorably disposed toward the good order and happiness of the United States; and
> (8) Is not a person described in Section 314 of the Act relating to deserters of the United States Armed Forces or those persons who departed from the United States to evade military service in the United States Armed Forces.

See also, INA §316(a) and 8 U.S.C. §1427(a).

21.  On December 1, 2020, Plaintiff filed his application for naturalization.  USCIS shall grant naturalization applications to qualified applicants who meet the statutory requirements set forth at 8 U.S.C. §1427, and the regulatory requirements set forth at 8 C.F.R. §§334, 335. see 8 C.F.R. §335.3.

22.  On October 27, 2021, Plaintiff appeared for interview at the USCIS' Field Office in Indianapolis to determine Plaintiff's eligibility for naturalization.  Long after the prescribed statutory period for adjudicating such applications, USCIS denied Plaintiff's application for naturalization on February 15, 2023.

23.  USCIS asserted several propositions for denying Plaintiff's application for naturalization.  USCIS listed, *inter alia,* the following reasons: (a) that Plaintiff was not lawfully admitted to permanent residence, (b) that Plaintiff made false representations in his DV Program application when he stated that he was married to Ms. Diallo because Plaintiff did not continue in a marital relationship with Ms. Diallo after they entered the United States.

24.  In addition, USCIS alleged that (a) Plaintiff was involved in a relationship with another woman during his marriage to Ms. Diallo, (a) that at least one of Plaintiff's children was born during his marriage to Ms. Diallo, and (c) Plaintiff and Ms. Diallo did not continue to live together for a prolong period after they migrated to the United States.

25.  Pursuant to 8 C.F.R. §336.2, Plaintiff requested a hearing on the denial of his application for naturalization by filing a request with USCIS within thirty days after the date

Plaintiff received the notice of denial.  See also, INA §336.  Plaintiff submitted substantial evidence to rebut the claims USCIS raised in its denial notice.

26.   On June 28, 2024, USCIS reaffirmed its decision to deny Plaintiff's application for naturalization.  Among others, USCIS posited that "[y]our motion to re-open, offers no evidence showing a joint life with Ms. Aissatou Diallo, or any evidence that the marriage was not entered into for the purpose of evading the immigration laws."

27.   Pursuant to 8 U.S.C. §1421 (c), "[a] person whose application for naturalization is denied, after a hearing before an immigration under section §1447(a) of this title, may seek review of such denial before the United States District Court for the district in which such person presides in accordance with chapter 7 of title 5.  Such review shall be *de novo*, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing *de novo* on the application."

28.   The APA, 5 U.S.C. §706 provides that a Court "shall hold unlawful and set aside agency action, findings, and conclusions found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity, [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights."

29.   Plaintiff has demonstrated his eligibility for naturalization

30.   Plaintiff was a lawful permanent resident for over five (5) years during the time Plaintiff applied for naturalization and continues to reside in the United States.

31. Plaintiff has been and still is a person of good moral character.   Plaintiff and Ms. Diallo jointly entered as candidates for the DV Program without prior knowledge that they would be selected as winners.   Being married was not a requirement for entering the DV Program.   Plaintiff could not have entered his marriage with marriage Ms. Diallo to circumvent United States immigration laws.

32.   In the June 28, 2024, decision, USCIS stated that it "constitutes a final administrative denial of your application for naturalization" and that Plaintiff "may request judicial review of this final determination by filing a petition for review in the United States District Court having jurisdiction over your place of residence."   Plaintiff has, therefore, exhausted administrative remedies.

**CAUSES OF ACTION**

**COUNT 1 – VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT**

33. The allegations contained in paragraphs 1 through 32 above are repeated and incorporated as though fully set forth herein.

34. To establish under INA §316(a) and 8 U.S.C. §1427(a) Plaintiff must show that:  (1) he meets the residence requirements prior to filing his application for naturalization; (2) he has resided continuously within the United States from the date of his application, and (3) during the periods referred to in this subsection, he has been and still is a person of good moral character.

35. Plaintiff had been a lawful permanent resident of the United States for five years at the time of his application for naturalization and continues to reside in the United States.

36. Plaintiff had been and still is a person of good moral character.

37. Plaintiff demonstrated that he had and still has basic knowledge of U.S. history and government.

38. Plaintiff demonstrated that he had and still reads, write and speak words in ordinary usage in English Language.

39. Defendants have unlawfully denied Plaintiff's application for naturalization.

40. Plaintiff requests that the Court conduct a hearing *de novo* of Plaintiff's application for naturalization pursuant to INA §310 and 8 U.S.C. §1421(c).

41. Plaintiff requests that the Court grant his application for naturalization in accordance with the INA §316 or any other section of the Act.

## COUNT 2 – ADMINSITRATIVE PROCEDURE ACT

42. The allegations contained in paragraphs 1 through 32 above are repeated and incorporated as though fully set forth herein.

43. The purpose of the APA is to prevent abuse of discretion by federal agencies by granting the federal judiciary authority to review the actions of such agencies.

44. The court also may hold unlawful and set aside agency action that, *inter alia*, is found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A) (*emphasis added*); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C); or "without observance of procedure required by law," 5 U.S.C. § 706(2)(D). "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551 (13) (*emphasis added*).

45.  The decision of USCIS, which is under the supervision of Defendants Mayorkas and Defendant Garland to lawfully adjudicate Plaintiff's N-400 raises legal issues under the APA. This denial of Plaintiff's application for naturalization constitutes an "agency action" within the definition of the APA.  The APA, therefore, grants this court authority to review the agency's action for "abuse of discretion."

46.  Plaintiff requests that the Court hold as unlawful and set aside Defendants' denial of Plaintiff's application for naturalization pursuant to the APA, 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that the Court:

1. Conduct a hearing de novo on Plaintiff's application for naturalization;

2.  Hold as unlawful and set aside Defendants' denial of Plaintiff's application for naturalization;

3.  Order the Defendants to grant U.S. citizenship to Plaintiff

4.  Enter a declaratory judgment that the Defendants' denial of Plaintiff's application for naturalization violates the U.S. Constitution, the INA, the federal regulations, the APA, and that such denial is arbitrary and capricious;

5.  Award Plaintiff his costs and reasonable attorneys' fees in this action under the Equal Access to Justice Act ("EAJA"), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, and on any other basis justified under law; and

6.  Grant any and all other such relief that this Court deems just and equitable.

Respectfully submitted,

*/s/Flora A. Owolabi*
Flora A. Owolabi
Law Office of Flora A Owolabi
450 E. 96th Street, Suite 500
Indianapolis, Indiana 46240
flora@owolabilaw.com

*/s/ Swaray E. Conteh*
Swaray E. Conteh (Ind. Bar # 18586-49)
The Law Office of Swaray Conteh
3905 Vincennes Road, Suite 303
Indianapolis, Indiana 46268
contehlaw@att.net

Attorneys for Plaintiff